IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00228-STV

MOHAMMED AL GHAREEB,

    Plaintiffs,

v.

BOARD OF TRUSTEES AT THE UNIVERSITY OF NORTHERN COLORADO,

    Defendant.
_____

**ORDER**
_____

Entered By Magistrate Judge Scott T. Varholak

    This matter is before the Court on Defendant Board of Trustees at the University of Northern Colorado's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion"). [#34]  The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##9, 15-16]  The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion.  For the following reasons, the Motion is **GRANTED IN PART and DENIED IN PART**.

I.   **BACKGROUND**[1]

Plaintiff is from the United Arab Emirates ("UAE") and was studying for his Ph.D. in Applied Statistics and Research Methods at the University of Northern Colorado ("UNC"). [#32 at 5] He was the only student from the UAE in the department. [*Id.* at 9] During the spring 2014 semester, Plaintiff had a class with Professor Trent Lalonde.[2] [*Id.* at 5] Professor Lalonde was aware of Plaintiff's national origin because the students introduced themselves during the first class, and also because during the semester, Plaintiff informed Professor Lalonde that he had to travel home to the UAE due to a death in the family. [*Id.* at 9] In the spring of 2014, Plaintiff was in his mid-40s, Plaintiff's classmates were in their early 30s, and Professor Lalonde was in his mid-30s. [*Id.* at 12]

Throughout the spring 2014 semester, Professor Lalonde avoided eye contact with Plaintiff, and no other students, though Plaintiff sat in the middle of the front row. [*Id.* at 9] Professor Lalonde also graded Plaintiff's work differently than his classmates', despite the fact that the students worked in a group to complete the homework and Plaintiff provided the same answers as his groupmates. [*Id.* at 10] For example, in two out of eight homework assignments, Professor Lalonde counted Plaintiff's wrong answers twice and dismissed his correct answers. [*Id.*] Professor Lalonde also questioned Plaintiff's abilities and integrity by asking whether Plaintiff sought assistance in completing a take-home exam. [*Id.*] Professor Lalonde gave Plaintiff a D in the class—a failing grade. [*Id.*]

---

[1] The facts are drawn from the allegations in Plaintiff's Second Amended Complaint (the "Amended Complaint") [#32], which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).
[2] While Plaintiff refers to his professor as Lalonde Trent, Defendant's briefing indicates that his name is Trent Lalonde, and the Court refers to him accordingly.

Plaintiff realized that the final grade excluded two homework assignments, and was able to raise his grade to a C-, but Plaintiff nevertheless faced expulsion if he was unable to raise his grade point average ("GPA"). [*Id.* at 10-11] According to Plaintiff, the only difference between him and his groupmates was his age and national origin. [*Id.* at 10, 12]

Following the spring 2014 semester, Plaintiff reached an agreement with UNC's administration that he would not have further academic interactions with Professor Lalonde. [*Id.* at 6, 13] During the subsequent semester, Plaintiff was able to achieve a 4.0 GPA, raising his overall GPA above passing. [*Id.* at 6]

In January 2017, Plaintiff took a comprehensive exam, which students must pass in order to graduate. [*Id.* at 11] The comprehensive exam is divided into a theory section on the first day and a method section on the second day. [*Id.*] Professor Lalonde was the faculty member assigned to watch Plaintiff during the exam, which put him "in an uncomfortable and stressful environment." [*Id.* at 14] Plaintiff did not take the exam with any other students. [*Id.*] During the first day of the exam, Plaintiff was given a methods question by Professor Lalonde, which caused disruption and anxiety since Plaintiff had only prepared for the theory section of the exam. [*Id.*] This had never happened to any other students in the past. [*Id.*] Plaintiff failed the theory portion of the exam. [*Id.* at 7-8, 14] Plaintiff provided the same answer to a question that appeared on both the midterm and the comprehensive exam, and while he received a 100% on the midterm response, he was failed on the same answer for the comprehensive exam. [*Id.*]

In October 2017, Plaintiff discovered that Professor Lalonde participated in the making and grading of the majority of the questions on Plaintiff's comprehensive exam,

3

while the rest of the exam was created and graded by Plaintiff's advisor. [*Id.* at 7] This arrangement violated Plaintiff's agreement with UNC that he would not have any further academic contact with Professor Lalonde, and also went against a department manual stating that each professor writes and grades questions only for the classes they teach, and that four to five professors should create and grade the exam in total. [*Id.* at 13-15] Plaintiff was the only student to have two professors (rather than four to five) grade his exam. [*Id.* at 11]

Plaintiff, proceeding pro se, filed the instant action on January 28, 2019 [#1], and filed his Amended Complaint on May 29, 2019 [#32]. The Amended Complaint asserts three causes of action: national origin discrimination in violation of Title VI of the Civil Rights Act; age discrimination in violation of the Age Discrimination Act; and breach of contract. [*Id.* at 9-15] Defendant filed the instant Motion on June 12, 2019, arguing that Plaintiff's Amended Complaint should be dismissed in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [*See generally* #34] Plaintiff has responded to the Motion [#35], and Defendant has replied [#36].

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that

jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id.* at 1110 n.3. The Court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

### III. ANALYSIS

Defendant makes the following arguments in support of its Motion: (1) the Court lacks jurisdiction over Plaintiff's age discrimination claim because Plaintiff failed to exhaust his administrative remedies [#34 at 11-13]; (2) Plaintiff's national origin and age discrimination claims were not timely filed under the statute of limitations [*id.* at 5-8]; (3) even if those claims are not time-barred, Plaintiff nevertheless fails to state a national origin or age discrimination claim [*id.* at 8-10]; and (4) Plaintiff's breach of contract claim is barred by Eleventh Amendment sovereign immunity [*id.* at 10-11]. The Court addresses each argument in turn.

#### A. Age Discrimination Act Claim

Defendant contends that the Court lacks jurisdiction over Plaintiff's age discrimination claim because Plaintiff failed to comply with the administrative prerequisites to filing such a claim in federal court. [#34 at 11-13] The Age Discrimination Act "prohibit[s] discrimination on the basis of age in programs or activities receiving Federal financial assistance." 42 U.S.C. § 6101. A claimant must satisfy two requirements prior to bringing a claim in federal court—specifically, a notice requirement and an exhaustion requirement. *Id.* § 6104(e), (f); *see also Alexander v. N.M. Vocational*

*Rehab.*, No. 1:07-cv-0230 MCA/LCS, 2008 WL 11399605, at *5 (D.N.M. Sept. 25, 2008). Pursuant to the notice requirement, at least 30 days prior to filing a federal action, the claimant must "give notice by registered mail . . . to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed." 42 U.S.C. § 6104(e)(1). The notice must "state the nature of the alleged violation, the relief to be requested, the court in which the action will be brought," and specify whether the claimant is seeking attorneys' fees. *Id.* § 6104(e)(2). As to exhaustion, the plaintiff properly exhausts administrative remedies if the plaintiff has filed a complaint before the relevant federal funding agency, and 180 days have elapsed without a finding by the agency, or since a finding in favor of the plaintiff. *Id.* § 6104(f). A federal court lacks subject matter jurisdiction over Age Discrimination Act claims if either prerequisite is not met. *See id.* § 6104(e)(2) ("No action [pursuant to the Act] shall be brought . . . if administrative remedies have not been exhausted."); *see also Ombe v. Martinez*, No. 14-CV-00763 RB/KBM, 2015 WL 13662809, at *3 (D.N.M. May 28, 2015) (collecting cases); *Alexander*, 2008 WL 11399605, at *6 (collecting cases); *Wieker v. Mesa Cty. Valley Sch. Dist. #51*, No. 05-cv-806-WYD-CBS, 2007 WL 595629, at *9-10 (D. Colo. Feb. 21, 2007).

Here, Plaintiff has not alleged in his Amended Complaint (nor in any other iteration of the complaint) that he gave proper notice of the instant lawsuit, or that he first filed a complaint before the relevant federal funding agency, as required by the Age Discrimination Act. [*See generally* #32]; *see also Ombe*, 2015 WL 13662809, at *3 (dismissing Age Discrimination Act claim where plaintiff failed to allege that he gave the perquisite notice or that he filed a complaint with the proper federal agency); *Alexander*,

7

2008 WL 11399605, at *6 (dismissing Age Discrimination Act claim where "[t]here [wa]s no indication from the Complaint that Plaintiff ha[d] satisfied either the notice or the exhaustion requirement"). Moreover, in Plaintiff's Response to Defendant's Motion, Plaintiff admits that he "was running on a deadline to file a lawsuit and therefore had no time to file a complaint to the Secretary of Health and Human Services." [#35 at 4]

Accordingly, Plaintiff has failed to satisfy the administrative prerequisites of an Age Discrimination Act claim, and the Court thus lacks subject matter jurisdiction over Plaintiff's age discrimination claim. Accordingly, the Court **GRANTS** Defendant's Motion to the extent it seeks dismissal of Plaintiff's Age Discrimination Act claim, and that claim is **DISMISSED WITHOUT PREJUDICE**. *See, e.g.*, *Kelly v. Wilson*, 426 F. App'x 629, 633 (10th Cir. 2011) (holding that dismissal for lack of subject matter jurisdiction must be without prejudice); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (same).

### B. Statute of Limitations

Defendant further argues that to the extent Plaintiff's national origin discrimination claim is premised on allegations from the spring 2014 semester, that claim is barred by the statute of limitations.[3] [#34 at 5-8] Because Title VI does not contain a statute of limitations, the Court must "borrow the most closely analogous state time limit." *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 419 (2005). The Tenth Circuit has determined that Title VI and other civil rights claims "are best characterized as actions for injury to personal rights." *Baker v. Bd. of Regents of State*

---

[3] Because Plaintiff's Age Discrimination Act claim must be dismissed, the Court only addresses Defendant's remaining arguments as they relate to Plaintiff's claims of national origin discrimination and breach of contract.

8

*of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993). In Colorado, the statute of limitations for personal injury actions is two years. Colo. Rev. Stat. § 13-80-102(1)(a); *see also id.* § 13-80-102(g). Accordingly a two-year statute of limitations applies to Plaintiff's national origin discrimination claim.

While Colorado law provides the statute of limitations, the Court determines when Plaintiff's claim accrued under federal law. *Romero v. Lander*, 461 F. App'x 661, 666 (10th Cir. 2012). As the Tenth Circuit has explained:

> In general, under the federal discovery rule, claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action. In particular, a civil rights action accrues when facts that would support a cause of action are or should be apparent.

*Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (citations and quotations omitted); *see also Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (noting "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful").

Here, any claim arising out of Professor Lalonde's alleged discriminatory behavior toward Plaintiff during the spring 2014 semester clearly accrued by the conclusion of that semester. Plaintiff alleges that throughout the spring of 2014, Professor Lalonde avoided eye contact with Plaintiff, graded Plaintiff's work differently than his classmates', even when they provided the same responses, questioned whether Plaintiff completed a take-home exam on his own, and gave Plaintiff a failing grade in the class, threatening his eligibility to stay in the Ph.D. program, all on the basis of Plaintiff's national origin. [#32 at 9-12] Plaintiff thus knew, or should have known, of the spring 2014 conduct giving rise to his national origin discrimination claim by the end of that semester. *See, e.g.*, *Ransom*

9

*v. San Jacinto Junior Coll.*, No. 4:13-CV-1743, 2014 WL 3843642, at *3 (S.D. Tex. Aug. 4, 2014) (finding plaintiff's Title VI claims accrued as of May 2011, at which point plaintiff "was clearly on notice of her second course failure, her ineligibility for graduation, . . . her dismissal," and that the college had previously waived course failure for students who were white). Plaintiff filed the original complaint in this matter on January 28, 2019 [#1]—well beyond two years after the spring 2014 semester. Accordingly, to the extent Plaintiff's national origin discrimination claim is premised on conduct from the spring of 2014, the claim is time-barred.

On the other hand, Plaintiff further alleges several anomalies with respect to the administration of his comprehensive exam in January 2017. [#32 at 7-8, 11, 14] Plaintiff claims that Professor Lalonde was the faculty member assigned to watch Plaintiff during the exam, that Professor Lalonde gave Plaintiff a methods question during the theory portion of the exam, and that Plaintiff failed the theory portion of the exam, including failing a question that he previously answered correctly on a midterm exam. [*Id.*] In October 2017, Plaintiff discovered that Professor Lalonde and one other professor had written and graded Plaintiff's exam, contravening department procedures and Plaintiff's agreement with UNC that he would have no further academic contact with Professor Lalonde. [*Id.* at 7, 13-15] To the extent these allegations could give rise to a national origin discrimination claim, they are distinct from the spring 2014 allegations, and accrued at the earliest in January 2017 and at the latest in October 2017. Accordingly, the instant action, filed in

10

January 2019, was filed within two years of the alleged injuries stemming from the comprehensive exam.[4]

For the foregoing reasons, Defendant's Motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's Title VI claim premised on the spring 2014 conduct. However, that claim is not time-barred insofar as it arises out of the incidents in January 2017. Plaintiff's national origin discrimination claim nevertheless fails for the reasons discussed below.

**C. Failure to State a National Origin Discrimination Claim**

Defendant argues that Plaintiff fails to state a Title VI national origin discrimination claim because Plaintiff has not pleaded any link between the allegedly discriminatory

---

[4] To the extent Plaintiff is attempting to preserve any discrimination claims premised on the spring 2014 conduct under the continuing violation doctrine, any such argument fails. [*See* #35 at 2] The continuing violation doctrine allows a plaintiff, under certain circumstances, to "recover for discriminatory acts that occurred prior to the statutory limitations period if they are part of a continuing policy or practice that includes the act or acts within the statutory period." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003) (quotation omitted). But, as an initial matter, courts have noted that the continuing violation doctrine generally applies in the Title VII employment discrimination context, and "it is questionable whether the doctrine applies to claims brought under Title VI." *Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 234 (E.D.N.Y. 2010); *see also Pinson v. Pacheco*, No. 10-cv-01377-REB-MJW, 2011 WL 2579753, at *1 n.2 (D. Colo. May 9, 2011). Even if the continuing violation doctrine did apply to Plaintiff's Title VI claim, the Supreme Court limited the continuing violation rule in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), holding that "a continuing violation theory of discrimination is not permitted for claims against discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or a refusal to hire." *Davidson*, 337 F.3d at 1184. Because "discrete acts are easily identifiable and individually actionable," the Supreme Court reasoned that such acts occurring "outside of the limitations period, even though related to those occurring within the period, are not actionable." *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1202 (10th Cir. 2002) (citing *Morgan*, 536 U.S. at 114). Accordingly, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. Here, the Court finds that the spring 2014 acts were discrete from the conduct alleged in connection with the January 2017 comprehensive exam, and thus Plaintiff cannot pursue his national original discrimination claim based on the spring 2014 conduct.

conduct by Professor Lalonde and Plaintiff's national origin. [#34 at 8-10] The Court agrees.

Title VI provides that no person shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" because of the person's race, color, or national origin. 42 U.S.C. § 2000d. Thus to state a Title VI claim, Plaintiff must allege facts showing that Defendant intentionally discriminated against him on the basis of his race, color, or national origin, and that Defendant receives federal financial assistance. *Id.* Plaintiff cannot prevail on a Title VI claim unless he can demonstrate "a causal connection between the adverse actions and his membership in a protected class." *Alja-Iz v. Ramsey*, No. 3:14-CV-618-DJH, 2017 WL 6485803, at *14 (W.D. Ky. Sept. 13, 2017), *report and recommendation adopted*, 2017 WL 6504012 (W.D. Ky. Sept. 22, 2017); *see also Irwin v. Bd. of Regents for Okla. Agric. & Mech. Colls.*, 68 F.3d 483, 1995 WL 597257, at *2 (10th Cir. 1995) (Table decision) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994)). Finally, the Court "should 'show great respect for the faculty's professional judgment' when review of a purely academic decision is involved." *Irwin*, 1995 WL 597257 at *1 (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985)).

In *Irwin v. Board of Regents for the Oklahoma Agricultural and Mechanical Colleges*, the Tenth Circuit affirmed summary judgment in favor of the defendant where the plaintiff, a Chinese Ph.D. student, failed to establish a connection between her failing grade and racist remarks made by her professors. 1995 WL 597257, at *1, *2. Even though one professor had made a comment linking the plaintiff's national origin to her

success in the program, the comment "was made four years before the exam in an unrelated context," and "therefore [wa]s not probative of discrimination." *Id.* at *2; *see also Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013) ("Nowhere in either the Complaint or his opposition papers does [plaintiff] allege that any defendant referred to his race . . ., nor does he recite any other fact from which race[]. . . based discriminatory intent reasonably could be inferred."); *Scaggs v. N.Y. Dep't of Educ.*, No. 06-CV-0799 (JFB)(VVP), 2007 WL 1456221, at *11 (E.D.N.Y. May 16, 2007) ("A [Title VI] complaint falls short . . . where, as in this case, it fails to incorporate any factual allegations that would indicate how . . . race, gender, age, or national origin played a role in the alleged actions against plaintiff." (quotation omitted)).

Here, Plaintiff does not allege any racist or otherwise derogatory remarks made by Professor Lalonde at all, much less any references made to Plaintiff's national origin in connection with the administration of the 2017 comprehensive exam. Nor does Plaintiff allege any conduct that would support an inference of national origin discrimination. Plaintiff simply alleges that Professor Lalonde administered the exam, gave Plaintiff a methods question during the theory section, and wrote and graded Plaintiff's exam along with Plaintiff's advisor. [#32 at 7-8, 11, 14] While Plaintiff alleges that these arrangements violated his agreement with UNC to avoid academic contact with Professor Lalonde, went against department policy, and that no other student faced these irregularities [*id.* at 11, 13-15], Plaintiff does not include any allegations to suggest that any of the anomalies in the exam were related to his national origin. Plaintiff's conclusory allegation that this type of incident "never happened to another student before[,] therefore it shows discriminatory behavior" [*id.* at 11], does not support a Title VI claim. *See, e.g., Yusuf v. Vassar Coll.*,

13

35 F.3d 709, 713 (2d Cir. 1994) ("A plaintiff alleging racial . . . discrimination by a university must do more than recite conclusory allegations."); *Easley v. Univ. of Tex.*, 984 F. Supp. 2d 631, 635-36 (N.D. Tex. 2013) (finding conclusory allegations did not sufficiently allege that university professors violated Title VI by refusing to change the plaintiff's grade and dismissing his grade appeal); *Tripp v. Long Island Univ.*, 48 F. Supp. 2d 220, 224 (E.D.N.Y.1999) (holding "Plaintiff ha[d] offered no reasons other than her conclusory allegations to substantiate her claim that [her professor] acted with a racially discriminatory intent" in giving her a poor grade).

Accordingly, the Court **GRANTS** Defendant's Motion to the extent it seeks to dismiss Plaintiff's national origin discrimination claim. Because better pleading may be able to cure the defects discussed above, Defendant's Motion is **DENIED** to the extent it seeks dismissal with prejudice, and the national origin discrimination claim is **DISMISSED WITHOUT PREJUDICE**.[5]

### D. Contract Claim

Finally, Defendant argues that Plaintiff's state law breach of contract claim is barred by Eleventh Amendment sovereign immunity. [#34 at 10-11] The Court need not reach this argument. Having dismissed Plaintiff's federal claims, the Court declines to

---

[5] "By the time of a second amended complaint, it is often the case that pleading deficiencies such as those evident here may be deemed irreparable, and the complaint will be dismissed with prejudice." *Dyer v. Lajeunesse*, No. 15-cv-02404-WJM-CBS, 2017 WL 262692, at *4 n.4 (D. Colo. Jan. 20, 2017). Nevertheless, Plaintiff here has "never before received an opportunity to cure deficiencies identified by this Court," *id.*, other than this Court pointing out that Plaintiff had failed to properly identify the basis for the Court's jurisdiction or the nature of his claims in the original complaint [#4]. Accordingly, under these circumstances, the Court finds that the dismissal of the national origin discrimination claim should be without prejudice. The Court nevertheless reiterates that any claims arising out of conduct in 2014 are time-barred for the reasons discussed above.

14

exercise supplemental jurisdiction over Plaintiff's state law contract claim. When a district court has dismissed all claims over which it has original jurisdiction, 28 U.S.C. § 1367(c)(3) expressly authorizes the court to decline to exercise supplemental jurisdiction over any remaining state law claims. "Whether to exercise supplemental jurisdiction under such circumstances lies within the discretion of the court" and "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Sauer v. McGraw-Hill Cos.*, No. 99 N 1898, 2001 WL 1250099, at *18 (D. Colo. June 12, 2001) (quotations omitted). As a result, a district court will generally decline the exercise of supplemental jurisdiction when all federal claims have been eliminated prior to trial. *See id.* (*citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Aery v. Bd. of Cty. Comm'rs of Tulsa Cty.*, 696 F. App'x 360, 361 (10th Cir. 2017) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (quotation omitted)). Because Plaintiff's federal claims have been dismissed, the Court declines to exercise jurisdiction over Plaintiff's state law contract claim and that claim is **DISMISSED WITHOUT PREJUDICE**, so that Plaintiff may refile it in the appropriate state court.

IV. CONCLUSION

For the foregoing reasons, Defendant's Motion [#34] is **GRANTED IN PART and DENIED IN PART.** Specifically, the Court orders as follows:

(1) Defendant's Motion is **GRANTED** to the extent it seeks to dismiss Plaintiff's Age Discrimination Act claim but **DENIED** to the extent it seeks dismissal with

prejudice. The Age Discrimination Act claim is **DISMISSED WITHOUT PREJUDICE**.

(2) Defendant's Motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's national origin discrimination claim but **DENIED** to the extent it seeks dismissal with prejudice. The national origin discrimination claim is **DISMISSED WITHOUT PREJUDICE**.

(3) Defendant's Motion is **GRANTED** to the extent it seeks to dismiss Plaintiff's breach of contract claim but **DENIED** to the extent it seeks dismissal with prejudice. The contract claim is **DISMISSED WITHOUT PREJUDICE** to Plaintiff refiling in the appropriate state court.[6]

(4) Should Plaintiff seek to cure the deficiencies identified in Section III.C of this Order, **Plaintiff shall file a Third Amended Complaint on or before February 3, 2020. Failure to file a Third Amended Complaint by February 3, 2020 will result in dismissal of this case.**

DATED: January 13, 2020

BY THE COURT:

s/Scott T. Varholak
United Stated Magistrate Judge

---

[6] Should Plaintiff seek to file a Third Amended Complaint, he may include any state law claims in the Third Amended Complaint. If the Court finds that Plaintiff has plausibly pled a federal claim, the Court may then exercise supplemental jurisdiction over the state claims. Under those circumstances, the Court would address Defendant's Eleventh Amendment argument.